# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CASANDRA SENA-BAKER,

      Plaintiff,

v.                                                   Civ. No. 20-492 SCY/KK

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

Defendant Allstate Property and Casualty Insurance Company seeks to bifurcate Plaintiff's contractual claims from her extra-contractual claims, for both purposes of discovery and trial. Doc. 11 (Opposed Motion To Bifurcate And Stay Discovery Regarding Extra-Contractual Claims And Motion For Protective Order, filed June 30, 2020). Because case law does not mandate bifurcation in these circumstances, and because discovery and the evidence relevant to the two categories of claims overlap, the Court denies Defendant's motion to bifurcate discovery. Further, while the Court would be receptive to the argument that trial should proceed in two phases, the Court prefers to address this issue after the parties complete discovery and after the Court decides any dispositive motions the parties may file.

## BACKGROUND

On September 18, 2014, Plaintiff Casandra Sena-Baker was driving her vehicle and stopped in traffic when a vehicle driven by Debbie Chavez struck her from behind. Doc. 23, First

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 9, 10, 24.

Amended Complaint ("FAC") ¶ 5. According to the complaint, Ms. Sena-Baker sustained serious personal injuries as a result of the collision. *Id.* Ms. Sena-Baker also incurred medical bills and endured pain and suffering and loss of enjoyment of life as well as loss of household services. *Id.*

Eileen Chavez is Debbie Chavez's daughter and the owner of the automobile Debbie Chavez was driving when the collision with Ms. Sena-Baker occurred. *Id.* ¶ 7. At the time of the accident, Debbie Chavez did not have a driver's license, as her license had been revoked because she had been convicted of driving while intoxicated several times. *Id.* ¶ 8. Debbie Chavez did not have automobile liability insurance on the vehicle she was driving. *Id.* ¶ 7. Therefore, Ms. Sena-Baker made a claim under her own uninsured motorist ("UM") coverage with Defendant Allstate Property and Casualty Insurance Company. *Id.* ¶¶ 6, 14.

According to the complaint, an Allstate adjuster made a settlement offer for less than the medical bills incurred, stating that Ms. Sena-Baker had reached maximum medical improvement two months after the wreck, ignoring Ms. Sena-Baker's traumatic brain injury and much of her treatment, and failing to address the punitive damages claims against Debbie and Eileen Chavez. *Id.* ¶ 15.

This lawsuit followed. The First Amended Complaint ("FAC") contains three counts, enumerated as Counts III, IV, and V:[2] Count III, bad faith breach of contract; Count IV, violation of NMSA § 59A-16-20(E) and (G); and Count V, violation of NMSA § 57-12-1 *et seq.* Allstate filed the present motion to bifurcate, arguing that the insurance bad faith claims against it should

---

[2] The original complaint brought claims against Debbie and Eileen Chavez in Counts I and II. Doc. 1-1 at 10-11. Because the Amended Complaint does not bring claims against the Chavezes, Plaintiff omitted Counts I and II from the First Amended Complaint and enumerated the first listed Count in the Amended Complaint as Count III.

proceed only if a factfinder determines that Allstate breached the contract of insurance. If Allstate's offer to Ms. Sena-Baker was neither frivolous nor unfounded, then, Allstate argues, no bad faith claims against it can proceed.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Bifurcation under Rule 42(b) is "appropriate 'if such interests favor separation of issues and the issues are clearly separable,'" *Ortiz v. Safeco Ins. Co. of Am.*, 207 F. Supp. 3d 1216, 1217-18 (D.N.M. Sept. 13, 2016) (quoting *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003)), such as "when the resolution of one claim may eliminate the need to adjudicate one or more other claims." *Id.* at 1218 (citation omitted). However, bifurcation is "inappropriate when it will not appreciably shorten the trial or [a]ffect the evidence offered by the parties because claims are inextricably linked." *Buccheri v. GEICO Ins. Co.*, No. 17-CV-0490 LF/KK, 2017 WL 3575486, at *2 (D.N.M. Aug. 17, 2017) (quotation omitted). Further, bifurcation "is an abuse of discretion if it is unfair or prejudicial to a party." *Ortiz*, 207 F. Supp. 3d at 1218 (citing *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)).

The Court has broad and considerable discretion in deciding whether to sever issues for trial. *Buccheri*, 2017 WL 3575486, at *1 (citing *United States ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010)). To that end, "bifurcation is decided on a case-by-case basis and should not be regarded as routine." *Id.* at *2 (citing *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 97-98 (E.D. Pa. 1990)). The burden is on the moving party to show bifurcation is needed "as a single trial normally lessens the expense and inconvenience of litigation." *Ortiz*,

207 F. Supp. 3d at 1217. The Court also has broad discretion in managing its docket, including staying portions of discovery. *Willis v. Government Employees Ins. Co.*, No. 13-280 KG/KK, 2015 WL 11181339, at *1 (D.N.M. June 17, 2015) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

## **ANALYSIS**

Defendant makes two primary arguments in support of bifurcation. First, it argues that New Mexico law requires Plaintiff to proceed in two phases. Under Defendant's theory, Plaintiff must prove that she is legally entitled to recover uninsured motorist benefits; that is, she must establish all the elements of her cause of action against the tortfeasor (duty, breach, causation, and amount of damages) before she can litigate her extra-contractual claims against Defendant based on its handling of her UM claim. Doc. 11 at 5-7. Second, Defendant argues that, regardless of whether it is legally required, bifurcation is the more efficient course. This is because, according to Defendant, the need to litigate any extra-contractual claims will be eliminated if Plaintiff's recovery against the tortfeasor demonstrates that Defendant offered Plaintiff a reasonable amount to settle her claim. *Id.* at 9. In other words, Defendant's view is that the questions of fault and damages (and discovery related to it) are distinct from the question of whether Defendant handled Plaintiff's claim appropriately (and the discovery related to it). *Id.* at 10.

The Court disagrees with Defendant's arguments. Defendant's first argument fails to acknowledge that tortfeasor liability in this case is undisputed. Because the tortfeasor was completely uninsured, Defendant cannot credibly dispute that it has a duty to pay Plaintiff some amount of money. As a result, the dispute in this lawsuit concerns the not-so-distinct issues of how much Defendant must pay and whether its pre-litigation settlement offers were reasonable.

Thus, bifurcating this case would be neither convenient nor efficient. And, although Defendant's concerns regarding potential prejudice are legitimate, less drastic measures than the bifurcation Defendant seeks are available to address this potential prejudice. Therefore, the Court denies the motion.

**I.       The Law Does Not Mandate Bifurcation.**

Defendant asserts that "the New Mexico Court of Appeals recognizes that an insurer is entitled to a factual determination of the amount to which the insured is entitled to recover from the tortfeasor before the insurer may be deemed to have breached its contract of insurance." Doc. 11 at 7. Further, Defendant continues, the New Mexico Supreme Court has required claimants to do so in separate proceedings. *Id.*

Defendant's cases are distinguishable. First, Defendant relies on *Charter Services v. Principal Mutual Life Insurance Co.*, 1994-NMCA-007, 117 N.M. 82. *See* Doc. 11 at 5-6. In *Charter*, the court of appeals noted that "the concept of bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy." 1994-NMCA-007, ¶ 17. The problem for Defendant in the present case is that it is not disputing that it had a duty to pay *something*: it issued a policy to Plaintiff promising to compensate Plaintiff if Plaintiff was injured by an at-fault uninsured motorist. Thereafter, an at-fault uninsured motorist injured Plaintiff, triggering Defendant's duty to pay. The parties here are disputing *how much* Defendant had to pay, not *whether* Defendant had to pay.

But, Defendant continues, the New Mexico Court of Appeals has also held that an insurer's obligation to pay the claim does not arise at all until "the injured person prove[s] the elements necessary to establish an action in negligence [against the tortfeasor]: duty, breach, proximate cause, and loss or damages." *State Farm Auto. Ins. Co. v. Barker*, 2004-NMCA-105, ¶¶ 13-14, 136 N.M. 211 (internal quotation marks omitted). While this is true, *Barker* does not

5

preclude a plaintiff from litigating the elements of her negligence claim in the same proceeding as an extra-contractual claim against her insurer: in relevant part, *Barker* held only that it is not per se bad faith for an insurer to dispute the amount of damages to which a plaintiff is entitled against a tortfeasor. *Id.*

Finally, Defendant argues that the New Mexico Supreme Court has mandated a judicial determination of liability as a precondition to recovery for unfair insurance practices in an analogous context. Doc. 11 at 7. In *Hovet v. Allstate Insurance Co.*, a third-party claimant sued the tortfeasor's automobile insurer for unfair settlement practices relating to the third-party claimant's claim against the insured tortfeasor. 2004-NMSC-010, 135 N.M. 397. The New Mexico Supreme Court declared that "[a] third-party claimant's [bad faith] cause of action against the insurer for unfair settlement practices must await the conclusion of the underlying negligence action between the claimant and the insured." *Id.* ¶ 26. Accordingly, "a third-party claimant may not sue both the insured and the insurer in the same lawsuit." *Id.* The New Mexico Supreme Court was concerned about the potential for jury confusion as well as the "ethical implications of compelling attorneys to appear as witnesses in their own cases." *Id.* ¶¶ 25, 27. That is, the insurance company's attorney should not be required to appear to defend its insured in the tortfeasor action while also testifying about his or her conduct during settlement negotiations with the third party.

The Court disagrees that *Hovet* dealt with an analogous situation to the present case. *Hovet* was concerned about the problems presented by a single proceeding in which an insurance company would have to both (1) defend its insured, i.e. represent the tortfeasor, including participating in settlement negotiations with the third-party claimant; *and* (2) defend these settlement practices in the very proceeding in which they are taking place. Defendant here is not

6

placed in that position. It conducted settlement negotiations pre-litigation with one party (its insured) and when the parties could not agree on the appropriate settlement amount, Plaintiff filed suit. Unlike the distinct questions to be litigated in *Hovet*, there is really only one question to litigate here: was Defendant's pre-litigation settlement offer appropriate given Plaintiff's damages, or did Defendant unreasonably ignore Plaintiff's evidence of damages and her possible entitlement to punitive damages? That fairly simple question is unlikely to create jury confusion. Similarly, there is no risk that the insurance company's attorney will have to represent one party in the case while also testifying about his or her own conduct during settlement in the same case. In other words, although the insurance company stands in the shoes of the tortfeasor in this UM claim, *see Aragon v. Allstate Ins. Co.,* 185 F. Supp. 3d 1281, 1284 (D.N.M. 2016), because the insurance company is only representing itself, and not the tortfeasor, there is less concern about conflicting representation.

     The Court acknowledges, as Defendant Allstate argues, that other federal district courts have ordered bifurcation of underlying liability issues from extracontractual claims. In *Aragon v. Allstate Insurance Co.*, the plaintiff brought a claim against her insurer for underinsured motorist ("UIM") benefits, as well as extra-contractual claims for failure to settle. 185 F. Supp. 3d at 1282, 1287. The court explained that to recover UIM benefits, a plaintiff must establish the tortfeasor's negligence by proving duty, breach of duty, causation, and damages that exceed the tortfeasor's liability limits. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Safeco Ins. Co.*, 2013-NMSC-006, 298 P.3d 452, 456). The parties in that case disputed whether the plaintiff was entitled to UIM benefits because they disputed the extent and value of the plaintiff's injuries. *Id.* at 1283. The court further explained that, in contrast to a claim for UIM proceeds, bad faith failure to pay requires a showing that the insurer's "reasons for denying payment . . . were

frivolous or unfounded," and a claim under the Unfair Insurance Practices Act requires a showing that the insurer "failed to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear." *Id.* at 1288 (citing *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, 85 P.3d 230, 236, and NMSA § 59A-16-20(E)).

The court held that a plaintiff has no extra-contractual claims for failure to pay until she first proves she is legally entitled to collect UIM damages. *Id.* at 1286; *see also* NMSA § 66-5-301(A) ("No motor vehicle or automobile liability policy . . . shall be delivered or issued for delivery in New Mexico . . . unless coverage is provided . . . for the protection of persons insured thereunder who are *legally entitled* to recover damages from owners or operators of uninsured motor vehicles . . . for injury to or destruction of property resulting therefrom . . . ." (emphasis added)). To do this, a plaintiff must prove all the elements of a UIM claim – including damages that exceed the tortfeasor's liability limits. Accordingly, the court applied the reasoning from *Hovet v. Allstate Insurance Co.*, 2004-NMSC-010, 89 P.3d 69, to hold that an extra-contractual claim for failure to settle "may only be filed *after* the conclusion of the underlying negligence litigation, and *after* there has been a judicial determination of fault in favor of the [plaintiff] and against the insured." *Aragon*, 185 F. Supp. 3d at 1285 (quoting *Hovet*, 89 P.3d at 76) (emphasis in original). As such, "bifurcation (or dismissal) is mandatory because, under New Mexico law, resolution of the UIM claim is a condition precedent to [the plaintiff] bringing claims for bad faith [failure to pay]." *Id.* at 1286.

Other cases in this District reach a different outcome when the plaintiff alleges more than just an extra-contractual claim for failure to pay. In *Willis*, the plaintiffs sought UIM benefits from their insurer through a breach of contract action they filed when the parties could not agree

8

on the extent of the plaintiffs' damages. 2015 WL 11181339, at *2. The plaintiffs also alleged extra-contractual claims for failure to deliver the quality or quantity of services contracted for, failure to timely process the claim, and failure to act honestly. *Id.* at *1. The defendant insurer made a familiar argument, asserting that the "Plaintiffs must first establish that they are entitled to UIM benefits and damages under the insurance policy before any extra-contractual bad faith claims are ripe for adjudication." *Id.* at *2.

The *Willis* court, however, noted that "[a]n insurer in New Mexico can act in bad faith in its handling of a claim 'for reasons other than its refusal to pay' a claim in full." *Id.* at *3 (quoting *O'Neel v. USAA Ins. Co.*, 2002-NMCA-028, ¶ 7, 41 P.3d 356). Because the plaintiffs' extra-contractual claims were based on more than failure to pay, the court held that those claims were not dependent on the resolution of the UIM damages claim, and so bifurcation was not warranted. *Id.*; *see also Martinez v. State Farm Mut. Auto. Ins. Co.*, No. 16-cv-1029 WJ/LF, CM/ECF Doc. 27 at 6 (D.N.M. Mar. 27, 2017) (denying bifurcation and finding the reasoning in *Willis* to be persuasive when the plaintiff brought more than bad-faith failure-to-pay claims); *Shultzaberger v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-1028 KRS/CG, 2018 WL 456154, at *2 (D.N.M. Jan. 17, 2018) (granting bifurcation but holding that had the plaintiff "pleaded facts and otherwise developed his cause of action for unlawful trade practices & fraud act & insurance code [violations], a meritorious argument might be made that this court should go forward regardless of whether [plaintiff] prevails on his breach of the UIM provision"); *Prescott v. Bristol West Ins. Co.*, No. 18-756 KBM/JHR, 2019 WL 95929 (D.N.M. Jan. 3, 2019) ("Because Plaintiff alleges more than bad faith failure to pay, her extra-contractual claims are not dependent on the resolution of her UIM claim, and bifurcation is not mandatory."); *Buccheri v. GEICO Ins. Co.*, No. 17-CV-0490 LF/KK, 2017 WL 3575486, at *3 (D.N.M. Aug. 17, 2017) (same); *Yazzie*

*v. Gov't Emp. Ins. Co.*, Civ. No. 16-1085 KK/LF, CM/ECF Doc. 81 at 6 (D.N.M. Apr. 24, 2017) (plaintiffs asserted extra-contractual claims regarding quality or quantity of services, untimeliness, and dishonesty for reasons other than defendant's refusal to pay the claims in full, and these claims were not contingent on the outcome of their contractual claims).

To the extent the question of bifurcation turns on whether Plaintiff has alleged more than failure to pay the claim in full, the parties dispute the scope of Plaintiff's allegations. Doc. 17 at 5-7; Doc. 18 at 5. Plaintiff argues that "Plaintiff's complaint alleges much more than a simple dispute about the value of the claim" but then goes on to list a variety of disputes which concern the value of the claim and the payment owed from Defendant to Plaintiff: Plaintiff's injuries, her medical condition, and her entitlement to punitive damages. Doc. 17 at 5. Defendant's position that this is a mere failure-to-pay case is thus understandable. Ultimately, however, the Court finds that Plaintiff's Complaint alleges just enough to distinguish this case from *Aragon*: in addition to presenting arguments over the amount of Plaintiff's damages, Plaintiff alleges that Defendant breached its duty to investigate and consider her punitive damages claim by ignoring that claim altogether. Doc. 17 at 6-7; *see also* FAC ¶¶ 15, 26.

The Court thus concludes that Defendant's case law is distinguishable from the present case. Finally, and most importantly, the Court notes that bifurcation would not be mandatory even if Defendant were correct that, under New Mexico law, Plaintiff's extra-contractual claims for failure to settle are dependent on her proving she is legally entitled to recover UM benefits, including a showing of her exact damages in an amount that exceeds Defendant's offer of settlement. The federal rules govern bifurcation in federal court, not state rules. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1435 (10th Cir. 1993) (holding that the federal court is

10

not bound by the bifurcation rules of the Oklahoma state court). Therefore, the Court will examine whether bifurcation is appropriate under federal rules.

## II.     Practical Concerns Do Not Favor Bifurcation.

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Defendant argues that it would be inconvenient and prejudicial to it to litigate the liability issues and extra-contractual claims in the same proceeding.

The Court disagrees and concludes that, for a number of reasons, simultaneously proceeding with all discovery in this case is more efficient than bifurcating discovery. First, unlike many cases in which discovery is bifurcated, Defendant does not appear to dispute the liability of the tortfeasor in this case (Ms. Chavez rear-ending Plaintiff while Plaintiff was stopped for traffic). In its motion, Defendant makes no argument that the tortfeasor's liability is at issue—only that the "amount of damages" is in dispute. *E.g.*, Doc. 11 at 2 ("Allstate and Plaintiff could not agree on the amount of damages Plaintiff was legally entitled to recover for the alleged injuries in the accident."). Thus, even though an insured in a first-party claim stands in the shoes of the tortfeasor, the insured here is not arguing that there is no liability and no duty to pay at all. As explained above, concerns that motivated the New Mexico Supreme Court's decision in *Hovet* therefore do not exist in the present case. *See Hovet*, 2004-NMSC-010, ¶¶ 25, 27. Instead, Plaintiff's contractual claims relate to the amount of Plaintiff's damages and the extra-contractual claims relate to an overlapping question of whether Defendant's assessment of those damages was frivolous or unfounded, or whether Defendant failed to properly investigate Plaintiff's punitive damages claim.

Contrary to Defendant's argument, the Court finds that discovery on Plaintiff's contractual claims will overlap with discovery on Plaintiff's extra-contractual claims. Relevant to

both the amount of Plaintiff's damages (the central issue in Plaintiff's contractual claim) and whether Defendant's assessment of Plaintiff's damages constituted bad faith (the central issue in Plaintiff's extra-contractual claims) is evidence related to Plaintiff's injuries. In other words, discovery will be needed as to Plaintiff's medical status and alleged brain injury on her contractual claim (to determine how much Defendant owes her under the policy) *and* on her extra-contractual claim (to determine whether Defendant's evaluation of *those same factors* was frivolous or unfounded). Such a situation does not easily lend itself to bifurcated discovery.

Rather than resulting in conservation of resources, if bifurcated, this overlap is likely to create disputes as to whether a particular discovery request or deposition question relates to the contractual claims or the stayed extra-contractual claims. Given that the two types of claims are divided by a vast area of gray rather than a bright line of red, such disputes will not be easy to resolve. And, more importantly, time spent resolving such disputes has little return on investment for either the parties or the Court.

Additionally, granting Defendant's request to bifurcate discovery would foreclose Defendant's alternative option of having one jury trial in which the contractual claims phase is separated from the extra-contractual claims phase (should such a second phase be necessary). As Plaintiff argues, granting Defendant's request to bifurcate discovery would create a risk that the parties would engage in discovery on the contractual claims, have a jury trial on such contractual claims, then engage in discovery on the extra-contractual claims (during which many of the same witnesses would have to be re-deposed), and have yet another trial before another jury (in which many of the same witnesses would have to be called again and much of the same evidence would have to be re-presented). *See* Doc. 17 at 3-4.

The potential waste of resources expended on such a path would far outweigh any potential savings that would be realized if Defendant prevailed in the first trial and additional discovery on the extra-contractual claims was thereby avoided. The delay in resolution of this matter that would occur should discovery proceed in two phases, and should two trials therefore necessarily be held months apart, runs counter to the public's interest in a speedy resolution of cases as set forth in the Civil Justice Reform Act. *See* 28 U.S.C. § 471 (expressing the intent "to facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes"). Although it is true that conducting litigation in a piecemeal fashion creates the opportunity to conserve resources in any given case, the more likely and frequent result of this strategy is to delay resolution of cases, drive up parties' expenses, and doubly inconvenience witnesses necessary to the presentation of evidence. If savings of resources necessarily resulted from the bifurcation of an initial threshold issue from issues dependent on the outcome of the threshold issue, discovery and trial on punitive damages would always be divided into a separate phase from liability issues. This does not happen, however, because, in the aggregate, such division would be grossly inefficient.

Instead, Plaintiff proposes that "a simple[r] solution would be to try the contractual claims first, have the jury render a verdict on those claims and then present the extracontractual claims to the same jury." *Id.* at 7. Although the Court does not rule on such a proposal now, it is not foreclosing the possibility that trial in this matter proceed in two phases (the second phase being necessary only if Plaintiff prevails in the first phase). The Court also does not now rule on whether these phases would be tried to the same, or a separate, jury. As a trial date approaches, the Court intends to hold a status conference in which it will address whether the issue of a

phased trial should be re-opened. At the status conference, the Court will address concerns such as whether Defendant's adversarial relationship with its insured on her breach-of-contract claim will unfairly influence the jury on the extra-contractual claims.

## **CONCLUSION**

Defendant's Opposed Motion To Bifurcate And Stay Discovery Regarding Extra-Contractual Claims And Motion For Protective Order, Doc. 11, is DENIED.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE